## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

                Plaintiff,

and

SALLY H. RAMIREZ,

                Plaintiff-Intervenor,

vs.                                       No. CIV 08-501 JB/WPL

BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY
OF DOÑA ANA, NEW MEXICO,

                Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Board of County Commissioners of the County of Doña Ana, New Mexico's Motion for Declaratory Order in Support of Settlement, filed May 20, 2010 (Doc. 341); and (ii) Plaintiff Sally Ramirez' Motion to Withdrawn Documents, filed July 9, 2010 (Doc. 353). The Court held a hearing on June 16, 2010. The primary issues are: (i) whether the Court has jurisdiction over the dispute between Plaintiff-Intervenor Sally H. Ramirez and her counsel of record, Mr. Gayle-Smith, regarding the distribution of the amount of the settlement received from Defendant Board of County Commissioner of the County of Doña Ana, New Mexico between Ramirez, as victim, and Mr. Gayle-Smith, as payment for attorney's fees; and (ii) whether the Court must conduct the trial which resolves the dispute between Ramirez and Mr. Gayle-Smith as a bench trial or a jury trial.

On June 16, 2010, the Court heard from all the parties regarding Mr. Gayle-Smith's Motion to Withdraw, the Motion for Declaratory Order, and Mr. Gayle-Smith's Notice of Attorney Charging Lien, filed June 16, 2010 (Doc. 349). The Court determined that it had jurisdiction over the dispute between Ramirez and Mr. Gayle-Smith, and set this matter for a non-jury trial to take place on July 9, 2010, see Transcript of Hearing at 4:19-5:1 (taken June 16, 2010)("Tr.")(Court)[1]; id. at 36:2-37:24 (Court); id. at 38:15-16, 39:6-8 (Court). On June 30, 2010, Mr. Gayle-Smith and Ramirez settled this matter with the assistance of the Honorable Judge Karen B. Molzen, United States Magistrate Judge. The Court is thus granting Ramirez' Motion to Withdraw Documents and denying the Defendant's Motion for Declaratory Order in Support of Settlement as moot.

## PROCEDURAL BACKGROUND

Plaintiff United States of America originally brought this matter before the Court as a suit to enforce Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e, against Doña Ana County. In its Complaint, the United States alleged that Ramirez and several of her co-workers had been subject to sexual harassment, see Complaint and Demand for Jury Trial, ¶ 5, at 1, filed May 21, 2008 (Doc. 1), and discrimination on the basis of their sex, see id. ¶ 7, at 2, and the United States demanded a jury trial on "all issues so triable," id. at 5. The Court permitted Ramirez to intervene on June 17, 2009. See Order Granting Unopposed Motion to Intervene, filed June 17, 2009 (Doc. 102). In Ramirez' Complaint, filed with her Motion to Intervene on May 7, 2009, Ramirez demanded a "trial by jury on all counts and issues so triable." Complaint for Civil Rights Violations at 8, filed May 7, 2009 (Doc. 68-1). The Court dismissed the United States' claims by Order filed March 28, 2010, but specifically retained jurisdiction over "the Settlement Agreement to resolve any

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited. Any final transcript may contain slightly different page and/or line numbers.

dispute between the parties pertaining to the Settlement Agreement."  Order, filed March 28, 2010 (Doc. 322.)  According to the Settlement Agreement, Doña Ana County is to mail "in care of her counsel where appropriate, a certified or bank check made payable, respectively, to Sally Ramirez in the amount of forty-thousand dollars ($40,000.00)."  Settlement Agreement Between the United States and Doña Ana County, New Mexico ¶ 16, at 13, filed March 31, 2010 (Doc. 323).  Pursuant to the settlement, the Court dismissed Ramirez as a Plaintiff in the underlying action with prejudice on June 16, 2010.  See Order of Dismissal, filed June 16, 2010 (Doc. 350).[2]  The Court has not, however, entered a final judgment, so all of the orders in this case remain interlocutory.

A lack of communication appears to exist between Ramirez and Mr. Gayle-Smith.  Mr. Gayle-Smith's Motion to Withdraw notes this breakdown.  See Motion to Withdraw ¶¶ 3-4, at 2.  According to Mr. Gayle-Smith's motion, Ramirez intended to terminate his services as of May 8, 2010.  See id. ¶ 2, at 1.  Mr. Gayle-Smith requested in his motion that the settlement check be delivered to himself, rather than Ramirez, so that he may deduct his fees therefrom.  See id. at 4.  Mr. Gayle-Smith has since requested that the Court order the settlement check be made out to both himself and Ramirez, as is the "custom in this district," Response to Motion for Declaratory Order ¶ 15, at 4, filed June 3, 2010 (Doc. 342), so that he may deduct his fees from the check, and forward the remainder to Ramirez, see id. at 4.  Mr. Gayle-Smith is apparently afraid he will not receive any payment for his services from Ramirez without a court order.  See id. ¶ 13, at 3.  In its motion, Doña Ana County asks the Court to determine how to administer the settlement check, see

----

[2] Doña Ana County filed an "opposed" motion to dismiss because of an "apparent lack of communication" between it, Ramirez, and her attorney of record, Mr. Gayle-Smith.  See Opposed Motion to Dismiss Intervention's Claims Based on Settlement ¶ 6, at 2, filed April 30, 2010 (Doc. 334).

Motion for Declaratory Order at 13, filed May 20, 2010 (Doc. 341), because of its inability to properly communicate with Ramirez or Mr. Gayle-Smith, see id. at ¶¶ 6, 8, at 2; id. ¶ 10, at 3. The United States opposes Mr. Gayle-Smith's request that the settlement check be made out to anyone other than Ramirez, as the settlement agreement requires. See Response to Defendant's Motion for Declaratory Order ¶ 2, at 1, filed June 4, 2010 (Doc. 343); Settlement Agreement ¶ 16, at 13, filed March 31, 2010 (Doc. 323).

Mr. Gayle-Smith provided notice on June 16, 2010 to all parties and the Court of his charging lien in this case, to which he asserts his written agreement with Ramirez entitles him. See Response to Defendant's Motion for Declaratory Order ¶ 16, at 4; Notice of Attorney Charging Lien ¶¶ 1-2, at 1. In his notice, Mr. Gayle-Smith requests that the Court accept his notice and order the settlement check be made out and delivered to him. See Notice of Attorney Charging Lien ¶¶ 7-9, at 2. Mr. Gayle-Smith indicates that he believes Ramirez owes him $20,000.00 -- half of her settlement check -- in fees for his services.[3] See Notice of Attorney Charging Lien ¶ 6, at 2; Settlement Agreement Between the United States and Doña Ana County, New Mexico ¶ 14, at 11, filed March 31, 2010 (Doc. 323).

The Court heard from all parties regarding the remaining motions -- Mr. Gayle-Smith's Motion to Withdraw and Doña Ana County's Motion for Declaratory Order in Support of Settlement -- on June 16, 2010. See Tr. at 4:20-23 (Court). At the hearing, Mr. Gayle-Smith reiterated that the problem facing himself and Ramirez is a "lack of communication." Tr. at 7:19-20 (Gayle-Smith). Mr. Gayle-Smith expressed his fear that Ramirez will not pay him without a court order, and he

---

[3] Although Mr. Gayle-Smith claims he has never accepted more than one-third of a settlement, he believes "the egregious behavior of his client in this matter supports his request of partial payment for the total number of hours actually worked on client's matters." See id. at 2 n.2.

asserted that, as of yet, he has received no compensation from Ramirez for his services.  See Tr. at 8:2-6 (Gayle-Smith).  In an effort to show the seriousness of his position, Mr. Gayle-Smith stated he will "file a motion to tie this money up for years" if Ramirez does not pay him.  Tr. at 8:1-2 (Gayle-Smith).   The Court witnessed the lack of communication between Ramirez and Mr. Gayle-Smith when Ramirez expressed her belief that Mr. Gayle-Smith had already withdrawn as her attorney as of the last settlement conference, and she stated that she has apparently never seen the Motion to Withdraw.  See Tr. at 12: 3-9 (Court, Ramirez).  Ramirez stated that it was Mr. Gayle-Smith who initiated the termination of their relationship.  See Tr. at 12:6-9 (Ramirez).  According to Ramirez, Mr. Gayle-Smith told her that his representation pertained only to the issues of "ret[aliation] and termination."  Tr. at 12:12-14 (Ramirez).  Ramirez told the Court that Mr. Gayle-Smith had never relayed to her any information regarding his substantive legal work on her behalf, nor had she ever seen any documents regarding fees.  See Tr. at 13:3-9 (Ramirez).  Additionally, Ramirez contended that Mr. Gayle-Smith told her he would not comply with her request to terminate his services, and that he had been verbally harassing her in other settings.  See Tr. at 12:25-13:2, 13:12-15 (Ramirez).  Ramirez told that Court that all she wants is "for him to stay away."  Tr. at 13:2 (Ramirez).

The other parties to this matter expressed concern about sending the settlement check to Mr. Gayle-Smith.  The United States' position was that the settlement check should be made out to none other than Ramirez, "per the terms of the settlement agreement."  Tr. at 10:4-7 (Weiss).  The United States also expressed concern about  "the appropriateness of sending the check to Mr. Gayle-Smith, given the turn of [] [e]vents," and Mr. Gayle-Smith's willingness to tie the settlement check up for years to ensure his payment.  Tr. at 10:13-16, 10:23-25 (Weiss).  Doña Ana County did not oppose Mr. Gayle-Smith's Motion to Withdraw, and declined to comment on the

merits of the dispute between Mr. Gayle-Smith and Ramirez.  See Tr. at 13:24-14:1, 18:22-23 (Carillo).  Doña Ana County expressed concern whether Mr. Gayle-Smith should receive the check, given that it was unsure whether Mr. Gayle-Smith represented Ramirez.  See Tr. at 16:10-11 (Carillo).  When asking the Court to determine to whom the settlement check should be delivered, Doña Ana County characterized Mr. Gayle-Smith's role in the case as "limited," noting his failure to return direct communication, and an apparent discrepancy regarding Ramirez' possible new counsel.  Tr. at 15:12-16:2, 18:7-19:2 (Carillo).  The Court expressed its concern that the attorney who had apparently been speaking with Doña Ana County's counsel on behalf of Ramirez was a bankruptcy attorney, but no parties were able to provide information regarding Ramirez' financial situation.  See Tr. at 19:8-20 (Court, Carillo).

After hearing from Ramirez, the United States, and Doña Ana County, the Court asked Mr. Gayle-Smith whether, in his opinion, his relationship with Ramirez was "irreconcilable."  Tr. at 21:1-2, 5 (Court).  Mr. Gayle-Smith admitted that he knew their relationship "broke down" when Ramirez stopped responding to him, but Mr. Gayle-Smith stated that the only dispute he ever had with Ramirez arose after they discussed her financial ability to continue to retain him.  See Tr. at 21:7-22:19 (Gayle-Smith).  In support of his demand for payment, Mr. Gayle-Smith asserted he had done "more than a hundred hours" of work on Ramirez' behalf, and blamed his breakdown in communication with Ramirez for his failure to respond to some motions.  Tr. at 24:24-25:16, 29:21-30:23 (Gayle-Smith).  According to Mr. Gayle-Smith, if he received only one-third of the settlement check, he would be "losing thousands of dollars."  Tr. at 30:24-25 (Gayle-Smith).  Mr. Gayle-Smith also reminded the Court that his Motion was conditional upon his ability to receive payment.  See Tr. at 29:16-21 (Gayle-Smith); Motion to Withdraw at 4.

The Court decided at the hearing that it could not "determine on the present record whether

-6-

[Mr. Gayle-Smith] is counsel [for Ramirez] or not." Tr. at 39:21-40:3(Court).  The Court therefore decided not to rule on Mr. Gayle-Smith's Motion to Withdraw until this (Court s dispute over fees is resolved, and instructed Doña Ana County's counsel to "not send [the settlement check] to anybody."  See Tr. at 38:6-39:20 (Court).  The Court set this matter for trial to be held on July 9, 2010, and directed the parties to bring the "fee arrangement and all the billing arrangements, [and] time sheets" for the Court to review in making its decision.  Tr. at 38:11-16 (Court).

The Court stated twice that this matter would be docketed as a non-jury trial, and neither party objected.  See Tr. at 39:6-8 (Court)("I'll do it as a nonjury trial. . . unless one of you knows of a reason why I should convene a jury for this matter."); Tr. at 39:15-17 (Court)("And so unless I hear otherwise from you, I'll assume this is a bench trial and resolve it as a matter of law after resolving the factual issues that are involved.").  As of the date of this Order, neither party has demanded a jury or otherwise indicated why the July 9, 2010 trial needs to be a jury trial.

On June 30, 2010, however, the Court was informed that Mr. Gayle-Smith and Ramirez had, with the help of Judge Molzen, settled their dispute.  Pursuant to their settlement, Mr. Gayle-Smith filed a Motion to Withdraw Documents, specifically, the Motion to Withdraw and Notice of Attorney Charging Lien.  See Motion to Withdraw Documents, at 1.

**LAW REGARDING JURISDICTION OVER AN ATTORNEY-CLIENT DISPUTE**

Supplemental jurisdiction is the power of a federal court to hear all claims which arise out of the same "common nucleus of operative fact" as one "case" which a plaintiff would normally be expected to try in a single proceeding.  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).[4]  Since Congress's codification of supplemental jurisdiction in 28 U.S.C. § 1367, courts have

_____

[4] Decisions before the 1990 codification of 28 U.S.C. § 1367 use the terms "ancillary" or "pendent" when describing what is now known as "supplemental" jurisdiction.  Supplemental

ruled that supplemental jurisdiction is a broad grant of jurisdiction over claims arising from the same case or controversy, as long "the action is one in which district courts would have original jurisdiction." Exxon Mobil Corp. v. Allapattah Servs, Inc., 545 U.S. 546, 547 (2005).

The United States Court of Appeals for the Tenth Circuit has ruled that a court properly has jurisdiction, as part of the court's supplemental jurisdiction, over disputes between an attorney and his or her client when the dispute is involving fees "with respect to the work done in the suit being litigated." Jenkins v. Weinshienk, 670 F.2d 915, 918 (10th Cir. 1982). Additionally, in Garrick v. Weaver, 888 F.2d 687 (10th Cir. 1989), the Tenth Circuit held that a court has supplemental jurisdiction over disputes between a client and his or her former attorney, even if that attorney "never participated in litigation before the court on the underlying subject matter." Id. at 690. In Garrick v. Weaver, the client discharged his attorney after the attorney procured a settlement in the suit, which the client rejected. See id. at 689. After retaining new counsel, the client agreed to a settlement, at which point the former attorney asserted a lien on the settlement for fees arising from his previous work. See id. The client's new counsel questioned the court's jurisdiction over the dispute. See id. at 690. The Tenth Circuit cited Jenkins v. Weinshienk and determined that the dispute fell within the court's supplemental jurisdiction, because the attorney's lien for fees for work he had done to procure a settlement, even though the client rejected the settlement, was "with respect to the work done in the suit being litigated." 888 F.2d at 690. (quoting Jenkins v. Weinshienk, 670 F.2d at 918). See Albuquerque Technical Vocational Inst. v. General Meters Corp., 17 Fed. Appx. 870, 871 (10th Cir. 2001)(noting that jurisdiction to consider an attorney's lien is

jurisdiction provides the Court jurisdiction over issues that arise out of the same case or controversy as that which gave a court its original jurisdiction. See Jenkins v. Weinshienk, 670 F.2d 915, 918 (10th Cir. 1982); Edwards v. Doe, 331 Fed. Appx. 563, 565 (10th Cir. 2009); 28 U.S.C. § 1367(a) (1990).

proper under 28 U.S.C. § 1367).

In a similar matter, in Edwards v. Doe, 331 Fed. Appx. 563 (10th Cir. 2009), the Tenth Circuit found that the district court had supplemental jurisdiction over a dispute between a client's present and former counsel.  See 331 Fed. Appx. at 569-571.  In Edwards v. Doe, during the course of litigation, the client's counsel left his firm, Holden & Carr, and formed his own firm, Capron & Edwards.  See 331 Fed. Appx. at 566.  The client retained Capron as counsel throughout the suit, including final judgment.  See id.  Once final judgment was rendered, Holden & Carr asserted a lien on the payment received on the judgment, and Capron & Edwards challenged the enforcement of the lien.  See id.  The Tenth Circuit held that "[t]he fee dispute here forms part of the same case or controversy as [the subject matter giving the court original jurisdiction] because it involves the two firms that represented the plaintiff in that action and involves an attorney's lien claimed in that action." 331 Fed. Appx. at 571.  The Tenth Circuit also noted that because the plaintiff was party to the fee agreement which Holden & Carr argued authorized its lien, the court's "interpretation of that contract could impact the plaintiff," which weighs in favor of the court's jurisdiction.  Id.  Although the Tenth Circuit noted that the action could have been brought in state court, in the interests of judicial economy, the district court that initially addressed the dispute "did not overstep its bounds in exercising supplemental jurisdiction." Id.

Supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right," and is justified by considerations of "judicial economy, convenience and fairness to litigants."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); see Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990)(holding that a court should use its discretion and exercise supplemental jurisdiction over claims when doing so would serve interests of "judicial economy, convenience, and fairness").  As such, a district court may decline to exercise jurisdiction over

-9-

claims if judicial economy, convenience, and fairness are not served by retaining jurisdiction.  See United Mine Workers of Am. v. Gibbs, 383 U.S. at 726; Jenkins v. Board of Las Cruces Public School Dist., No. CIV 07-0319 JB/KBM, 2008 WL 5992272, at *10 (D.N.M. Nov. 25, 2008) (Browning, J.).  Congress has enumerated four factors a court should consider when deciding to not exercise its supplemental jurisdiction over a claim:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (1990).  A district court, therefore, may exercise its supplemental jurisdiction when doing so would further the interest of judicial economy, convenience, and fairness, but may properly decline to exercise its supplemental jurisdiction when one of the factors enumerated by Congress in 28 U.S.C. § 1367(c) is present.

### LAW REGARDING THE SEVENTH AMENDMENT RIGHT TO A JURY TRIAL

The Seventh Amendment states: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."  U.S. Const. amend. VII.  According to rule 38 of the Federal Rules of Civil Procedure, a party may claim its Seventh Amendment right to a trial by a jury "on any issue triable of right by a jury . . . by serving the other parties with a written demand . . . no later than 14 days after the last pleading directed to the issue is served."  Fed. R. Civ. P. 38(b).  A demand for a jury

which does not specify issues to be tried by the jury is considered to be a demand for all issues so triable.  See United States v. Anderson, 584 F.2d 369, 371 (10th Cir. 1978); Fed. R. Civ. P. 38(c).  A party waives its right to a jury trial unless the demand is properly served.  See Fed. R. Civ. P. 38(d).  Additionally, "issues on which a jury trial is not properly demanded are to be tried by the court.  But the court may, on motion, order a jury trial on any issue for which a jury might have been demanded."  Fed. R. Civ. P. 39(b).

1.   **Law Regarding the Scope of a General Jury Demand.**

The Seventh Amendment right to demand a jury trial applies to specific issues raised in a complaint, not entire cases.  See Okla. Natural Gas Co. v. LaRue, 156 F.3d 1244 (Table), 1998 WL 568321, at *6 (10th Cir. Sept. 1, 1998).  The Tenth Circuit has ruled that a jury demand raised in a complaint alleging claims against one party does not cover issues which are raised in a separate complaint, against a different party.  See Okla. Natural Gas Co. v. LaRue, 1998 WL 568321, at *6.  For example, in Oklahoma Natural Gas Co. v. LaRue, the Tenth Circuit ruled on the timeliness and applicability of two jury demands that a defendant made in response to a plaintiff's complaint and an intervening plaintiff's complaints.  See 1998 WL 568321,  at *6.  In finding both untimely, the Tenth Circuit decided that the earlier jury demand, filed in response to the plaintiff's complaint alleging copyright infringement, did not cover issues that the intervening plaintiff raised in a later complaint, alleging violation of a publicity statute.  See  1998 WL 568321, at **6-7.  The Tenth Circuit ruled that the defendant's first jury demand could not apply to the intervening-plaintiff's claims because: "The caption applies only to the [plaintiff] . . . and [the pleading]  addressed different issues than those implicated by the pleadings related to the intervenors' claims."  1998 WL 568321, at *6.  Further, the Tenth Circuit noted that the defendant had "effectively" consented to a non-jury trial on the basis of the court's "repeated indications that this was scheduled to be a non-

-11-

jury trial," making the defendant's motion for a jury trial all the more untimely. 1998 WL 568321, at *7.[5]

Similarly, in <u>Nissan Motor Corp. v. Burciaga</u>, 982 F.2d 408 (10th Cir. 1992)(per curiam), the Tenth Circuit decided whether to uphold a jury demand a plaintiff asserted for the first time in an amended complaint, filed two years after the action commenced. <u>See</u> 982 F.2d at 409. Although the plaintiff argued that the jury demand in the amended complaint was timely because the amendment "raised new issues," the Tenth Circuit disagreed. 982 F.2d at 409. The Tenth Circuit ruled that "new issues" are not "new theories of recovery based on the same facts as those issues raised in the original complaint." 982 F.2d at 409. Rather, a "new issue" is an issue which the original complaint did not cover. 982 F.2d at 409.

Other circuits have also described the nature of a "new issue" when addressing whether a party's jury demand, raised for the first time in an amended complaint, is timely. The United States Court of Appeals for the Second Circuit has held that an amended complaint which requests a new form of legal relief, not contemplated in an original pleading requesting only equitable relief, raises new issues that a party's previous waiver of a jury trial did not cover. <u>See</u> <u>Bereslavsky v. Caffey</u>, 161 F.2d 499, 500 (2d Cir. 1947). The United States Court of Appeals for the Eight Circuit has held that an amended complaint which "substantially differ[s]" from prior pleadings, by asserting new affirmative defenses, raises new issues which entitle a party to demand a jury, even when the parties

_____

[5] In <u>Oklahoma Natural Gas Co v. LaRue</u>, the joint status report, which LaRue's counsel signed, and the scheduling order both indicated that the case was set for a non-jury trial, and Larue did not object. <u>See</u> 1996 WL 568321, at *7. <u>See</u> <u>also</u> <u>Kearney v. Case</u> 79 U.S. 275, 275 (1870)(holding that a plaintiff waives the right to a jury trial by proceeding to a non-jury trial without objection); <u>Southland Reship, Inc. v. Flegel</u>, 534 F.2d 639, 644 (5th Cir. 1976)(same); <u>Nat'l Family Ins. Co. v. Exch. Nat.'l Bank of Chicago</u>, 474 F.2d 237, 241 (7th Cir. 1973); <u>Smith v. Cushman Motor Works, Inc.</u>, 178 F.2d 953, 954 (8th Cir. 1950).

have previously waived their right to trial by jury.  First Wisconsin Nat.'l Bank of Rice Lake v. Klapmeier, 526 F.2d 77, 80 (8th Cir. 1975).  See also Virgin Air, Inc. v. Virgin Atl. Airways, Ltd., 144 F.R.D. 56, 58 (S.D.N.Y. 1992)(holding that a new issues exists when there is a "factual determination to be made by the jury that falls outside the matrix of fact[s] already covered in the pleadings"); 33 Fed. Prod., L. Ed. § 77:121 (2010)("A new issue does not exist unless there is a factual determination to be made by the jury that falls outside the matrix of fact already covered in the pleadings.").[6]

2.    **Law Regarding Attorney's Charging Liens and the Seventh Amendment.**

The Supreme Court has ruled that the scope of the Seventh Amendment includes suits in which legal rights are to be "ascertained and determined," but not suits which settle matters of equity.  Curtis v. Loether, 415 U.S. 189, 193 (1974)(quoting Parsons v. Bedford, 28 U.S. 433, 446-47 (1980)).  See City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 708-09 (1999); Granfinanciera, S.A. v. Nordberg, 294 U.S. 33, 41-42 (1989); Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 348 (1989); Ross v. Bernhard, 396 U.S. 531, 533 (1970).  The Tenth

---

[6] It may seem inconsistent that the scope of a court's supplemental jurisdiction is not the same as the scope of a general jury demand.  The Court has concluded from its research, nonetheless, that an "issue" which is covered by a party's previous waiver or demand for a jury trial is not the same standard as a claim falling within the same "transaction or occurrence," allowing a court to exercise supplemental jurisdiction over the claim.  For example, in United Mine Workers of America v. Gibbs, the Supreme Court of the United States held that supplemental jurisdiction may cover both state and federal claims which arise from the same factual situation, and therefore constitute one case.  See 333 U.S. at 725.  When a court examines whether a complaint raises new issues not covered by a prior jury demand, however, as the Tenth Circuit did in Nissan Motor Corp. v. Burciaga, a court looks must look at a party's previous pleadings and determine whether an amended complaint alleges claims based on facts which were not covered by previous pleadings. See 982 F.2d at 409.  This limited examination of facts and issues raised in previous pleadings for determining the scope of a jury demand, see 982 F.2d at 409, is a more narrow examination of court documents than an inquiry into a factual situation which gives a court supplemental jurisdiction over all claims arising from the same "transaction or occurrence," 333 U.S. at 725.

Circuit, following the Supreme Court, has held that the Seventh Amendment does not include equitable actions.  See Manning v. United States, 146 F.3d 808, 811-12 (10th Cir. 1998)("Actions at law entitle the parties to a jury, but equitable cases do not.").  For example, in Mile High Industries v. Cohen, 222 F.3d 845 (10th Cir. 2000), the Tenth Circuit decided whether a defendant could properly demand a jury trial, for the first time, on issues raised in an affirmative defense.  See id. at 855.  The Tenth Circuit examined the issues which the defendant raised -- laches, estoppel and acquiescence -- and found that all the issues were equitable in nature.  See id. at 855-860.  The Tenth Circuit held that "the Seventh Amendment right to a jury trial attaches to actions at law, not to those in equity"; therefore, the defendant did not have a Seventh Amendment right for a jury to try the equitable issues raised in his affirmative defenses.  222 F.3d at 856, 860.

An attorney's charging lien "attaches to the client's cause of action, verdict and judgment, and the proceeds thereof."  2 R. Rossi, Attorney's Fees § 12:13 (3d ed. 2009).  "The attorney's lien protects the attorney's right to recover his fees and money expended on behalf of his client from a fund recovered by his efforts."  Albuquerque Technical Vocational Inst. v. Gen. Meters Corp., 17 Fed. Appx. at 874(internal quotations omitted).  See also  Hanna Paint Mfg. Co. v. Rodey, Dickason, Sloan, Akin & Robb, 298 F.2d 371, 373 (10th Cir. 1962)("The enforceability of the lien is sustained upon the theory that the fund or judgment is the product of the services and skill of the attorney.").  The Tenth Circuit and district courts within the Tenth Circuit have held that an attorney's charging lien is equitable in nature.  See Albuquerque Technical Vocational Inst. v. Gen. Meters Corp., 17 Fed. Appx. at 874 ("Under New Mexico Law, an attorney's lien is an equitable remedy originating from the common law."); Hanna Paint Mfg. Co. v. Rodey, Dickason, Sloan, Akin & Robb, 298 F.2d at 373 ("The attorneys' lien . . . is an equitable right of an attorney to have the fees and costs due to him for services in suit secured to him out of the judgment or recovery in that particular suit.");

United States v. 36.06 Acres of Land, 70 F. Supp. 2d 1272, 1274 n.2 (D.N.M. 1999)(defining a charging lien as an equitable remedy,  giving "the attorney the right to be paid out of a fund which resulted from his skill and labor in a particular case"); Jones v. Farmers Ins. Exch. of Los Angeles, 112 F. Supp. 952, 955 (D. Okla. 1953)(holding that no right to a jury trial attached to the enforcement of an attorney's lien); 2 R. Kane, Am. Jur. 2d Attorneys At Law § 334 (2010)("The charging lien of an attorney is equitable in nature.").

### 3.    Law Regarding the Existence of an Attorney-Client Relationship and the Seventh Amendment.

The existence of an attorney-client relationship is a legal question,  requiring a factual inquiry that can be done by a jury.  For example, in Monus v. Colorado Baseball 1993, Inc., 103 F.3d 145 (Table), 1996 WL 723338 (10th Cir. Dec. 17, 1996), the Tenth Circuit decided whether an owner of the Colorado Rockies baseball franchise had an attorney-client relationship with the defendant which would allow the owner to proceed on his claims of legal malpractice.  See id. at **1-2.  The Tenth Circuit noted that the existence of an attorney-client relationship can be established only by a subjective inquiry into the facts of the particular case, see id. at *7, but also found that the owner had failed to raise a genuine issue of material fact whether the relationship existed, and therefore upheld a district court's ruling that an attorney-client relationship did not exist between the parties as a matter of law, see id. at *9.

District courts within the Tenth Circuit have allowed a jury to determine the existence of an attorney-client relationship, given the subjective, factual inquiry necessary to prove the existence of an attorney-client relationship.  See Int'l Tele-Marine Corp. v. Malone & Assocs., Inc. 845 F. Supp. 1427, 1431 (D. Colo. 1994).  For example, in International Tele-Marine Corp. v. Malone & Assocs., Inc, a district court denied the parties' motion for summary judgment on claims for

breach of fiduciary duty.  See id. at 1428, 1435.  Noting that "whether an attorney-client relationship exists is a question of fact for the jury," the court found that a jury could conclude, on the basis of facts before the court, that an attorney-client relationship had existed.  See id. at 1431.  Similarly, in DerKevorkian v. Lionbridge Technologies, Inc., No. CIV 04-1160, 2006 WL 898142, at *1 (D. Colo. Apr. 3, 2006), a district court explained its order for summary judgment establishing that an attorney-client relationship did not exist between the parties as a matter of law.  See id.  The court explained that summary judgment was proper, because the plaintiff had failed to raise a genuine issue of material fact upon which a jury could conclude that an attorney-client relationship had existed.  See id. at **2-4.

        The Tenth Circuit and the district courts within the Tenth Circuit have therefore treated the existence of an attorney-client relationship as requiring a subjective, factual inquiry that may be done by a jury.  Accordingly, a party may demand a jury trial, under the Seventh Amendment, for the fact-finding which may be necessary to determine whether an attorney-client relationship exists.

        **4.      Law Regarding Quantum Meruit Claims and the Seventh Amendment.**

        In the absence of a contractual relationship, a party may seek restitution from another whom the party's services has unjustly enriched.  See United States. v. Ins. Co. of N. Am., 695 F.2d 455, 458 (10th Cir. 1982).  This restitution is commonly referred to as "quantum meruit" and entitles a party to the reasonable value of the services rendered on behalf of another.  See id.; 66 A. Payne & M. Leahy, Am. Jur. 2d, Restitution and Implied Contracts § 37 (2010).  Quantum meruit is an equitable doctrine.  See Union Tele. Co. v. Qwest Corp., 495 F.3d 1187, 1197 (10th Cir. 2007) ("Quantum meruit []is an equitable doctrine that implies a contract so that one party may recover damages from another."); Bangert Bros. Const. Co., Inc. v. Kiewit Western Co., 310 F.3d 1278, 1285 (10th Cir. 2002)(referring to quantum meruit as an equitable remedy)(internal quotations

omitted); <u>AG Serv. of Am., Inc. v. Nielsen</u>, 231 F.3d 726, 729 (10th Cir. 2000)(same).  The Seventh Amendment right to a trial by jury therefore does not cover claims asserting a quantum meruit theory.

       **5.**       **<u>Law Regarding Disputes Over Attorneys' Fees and the Seventh Amendment</u>.**

       The Supreme Court has held that the law and equity distinction, which governs the applicability of the Seventh Amendment right to a jury trial, also determines whether a party is entitled to a jury trial to resolve a dispute over attorneys' fees.  <u>See</u> <u>Simler v. Conner</u>, 372 U.S. 221, 222 (1963).  The Tenth Circuit has used the law and equity distinction to hold that party may demand a jury trial to determine the amount of fees due to an attorney when attorneys' fees are used as a measurement for damages in a breach-of-contract action.  <u>See</u> <u>J.R. Simplot v. Chevron Pipeline Co.</u>, 563 F.3d 1102, 1115  (10th Cir. 2009).  In <u>J.R. Simplot v. Chevron Pipeline Co.</u>, the Tenth Circuit made a distinction between the legal issue raised when a party uses the amount of attorneys' fees paid by that party as a measurement for damages and other claims for attorneys' fees which may be equitable in nature.  <u>See</u> 563 F.3d at 1115-17 (citing <u>Eastern Trading Co. v. Refco, Inc.</u>, 229  F.3d 617, 627 (7th Cir.2000), <u>McGuire v. Russell Miller, Inc.</u>, 1  F.3d 1306, 1316 n.2 (2d Cir. 1993), and <u>Resolution Trust Corp. v. Marshall</u>, 939 F.2d 274, 279 (5th Cir.1991)).  The Tenth Circuit agreed with the distinction made by the Second, Fifth and Seventh Circuits, which have all held that liability for attorneys' fees sought under a contract provision for indemnification is a legal issue covered by the Seventh Amendment, however, the amount of attorneys' fees due under such a provision is an equitable issue which the judge should decide.  <u>See</u> <u>J.R. Simplot v. Chevron Pipeline Co.</u>, 563 F.3d at 1115-17.  <u>See also</u> 47 R. Eclavea, L. Martin & A. Payne, <u>Am. Jur. 2d Jury</u> § 47 (2010)("The Seventh Amendment to the Federal Constitution does not guarantee a trial by jury to determine the amount of reasonable attorneys' fees.  A jury may determine the amount

of attorneys' fees if the parties agree, but no party has an absolute right to such a jury determination."). Therefore, whether a party may demand a jury trial to resolve a dispute over attorneys' fees depends upon the manner in which attorneys' fees are sought.

      **6.**     **Law Regarding Breach-of-Contract Claims and the Seventh Amendment.**

A breach-of-contract claim is a legal issue, requiring a factual inquiry that can be done by a jury. See Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 569-70 (1990). The Tenth Circuit and district courts within the Tenth Circuit have similarly held that a party has a Seventh Amendment right to a jury trial in an action alleging a breach-of-contract. See Palace Exploration Co. v. Petro. Dev. Co., 316 F.3d 1110, 1120 (10th Cir. 2003); In re Am. Cmty. Servs., Inc., 86 B.R. 681, 691 (D. Utah 1988)("[T]his action seeking damages for breach of contract is legal in nature and triable by a jury."). The Seventh Amendment right to a jury trial therefore covers claims alleging a breach-of-contract.

## ANALYSIS

The present dispute before the Court is between Plaintiff-Intervenor Ramirez and her attorney of record, Mr. Gayle-Smith. The United States' underlying suit against Doña Ana County has settled, but due to the dispute between Ramirez and Mr. Gayle-Smith, Ramirez has not received her settlement check. Mr. Gayle-Smith has requested in his Motion to Withdraw and his Notice of Attorney Charging Lien that the Court order Doña Ana County to make out Ramirez' settlement check to both himself and Ramirez, so that he may deduct therefrom his attorney's fees. The United States does not oppose Mr. Gayle-Smith's withdrawal, but opposes his request regarding the settlement check because the terms of the settlement agreement require the check to be made out only to Ramirez. The settlement agreement provides that Doña Ana County "shall mail . . . in care of her counsel where appropriate, a certified or bank check made payable [] to Sally Ramirez in the

amount of forty-thousand dollars ($40,000.00)." Settlement Agreement ¶ 16, at 13. Doña Ana County does not oppose Mr. Gayle-Smith's withdrawal, but has expressed concern about sending the settlement check to Mr. Gayle-Smith, given the break-down in his relationship with Ramirez. Ramirez believes that Mr. Gayle-Smith is no longer her attorney and has allegedly never seen their fee agreement, but has not submitted any pleadings regarding Mr. Gayle-Smith's charging lien or alleged other legal claims against Mr. Gayle-Smith.

The Court has decided it cannot rule on the remaining motions in the underlying suit -- Mr. Gayle-Smith's Motion to Withdraw and Doña Ana County's Motion for Declaratory Order in Support of Settlement -- until the dispute between Ramirez and Mr. Gayle-Smith is resolved. The Court must therefore address whether it should resolve the dispute by a jury trial or with a bench trial.

## I.   **THE COURT HAS SUPPLEMENTAL JURISDICTION OVER THIS MATTER.**

The Court has supplemental jurisdiction over the dispute between Ramirez and Mr. Gayle-Smith.[7] According to the Tenth Circuit's ruling in Jenkins v. Weinshienk, supplemental jurisdiction covers disputes between an attorney and his or her client when the dispute is over fees "with respect to the work done in the suit being litigated." 670 F.2d at 918. Here, Mr. Gayle-Smith contends that the Court must order Ramirez to pay him fees for work he has done in her suit against Doña Ana County. As such, the Court has supplemental jurisdiction, because Mr. Gayle-Smith's claims are with respect to work he did for the suit which gave the Court original jurisdiction. Even if the Court determines that Ramirez discharged Mr. Gayle-Smith before her acceptance of the settlement agreement, the Court still has supplemental jurisdiction over the dispute in accordance

---

[7] Federal courts are courts of limited jurisdiction and therefore have an obligation to examine their own jurisdiction. See Amazon, Inc. v. Dirt Camp, Inc., 273 F.3d 1271, 1274 (10th Cir. 2001)

with Garrick v. Weaver.  See 888 F.2d at 687, 690(holding that the district court had supplemental jurisdiction, even though the attorney asserting a lien had not participated in litigation on the underlying subject matter, because the attorney's work had been done for the suit that the district court ultimately decided).  Because Mr. Gayle-Smith has participated in litigation on the underlying suit against Doña Ana County, the Court has supplemental jurisdiction over this dispute.  Additionally, if the Court determines that Ramirez has retained new counsel, it would still have supplemental jurisdiction over the dispute between Ramirez and Mr. Gayle-Smith, under Garrick v. Weaver.  See 888 F.2d 689-90(finding that a district court has supplemental jurisdiction over the dispute between a party and their former counsel, even after the party retained new counsel).  Lastly, the Court's supplemental jurisdiction over this dispute is consistent with the interests of judicial economy and fairness since exercising supplemental jurisdiction will expedite the dispute's resolution, and a decision awarding fees may impact Ramirez.  See Thatcher Enters. v. Cache County Corp., 902 F.2d at 1478 ("[D]iscretion [to use supplemental jurisdiction] should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction.)  The Court, therefore, has supplemental jurisdiction over the dispute between Ramirez and Mr. Gayle-Smith.

While the Court has supplemental jurisdiction, this Court may decline to exercise that jurisdiction in certain situations.  See United Mine Workers of Am. v. Gibbs, 383 U.S. at 726 ("It has consistently been recognized that [supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right."); 28 U.S.C. § 1367(c)-(d).  Under 28 U.S.C. § 1367(d), the Court may decline to exercise supplemental jurisdiction because all the federal claims, which gave this Court original jurisdiction, have been dismissed.  The Court will not decline to exercise jurisdiction in the circumstances of this case.  This lawsuit is a civil rights case that the United States Department of

Justice brought.  Ramirez is the alleged victim.  It would defeat, at least in part, the purposes of the nation's civil rights laws if victims never receive compensation after a case settles.   With Mr. Gayle's Smith's threats to prevent her payment for a long time, the Court concludes that it would be prudent to exercise jurisdiction.  Moreover, this case was not removed from state court. Ramirez sought to have her claims litigated in federal court with her motion to intervene, and Mr. Gayle-Smith was her attorney when she decided to file her motion.  There is no compelling reason to send the parties to a forum that they have not chosen.  Finally, no one has objected to the Court resolving the matters or argued that the Court does not have jurisdiction or should decline to exercise jurisdiction.  Accordingly, the Court retains jurisdiction over the fee dispute.

## II.    THE COURT WILL RESOLVE THIS MATTER BY A BENCH TRIAL UNLESS ONE OF THE PARTIES DEMANDS A JURY TRIAL ON THE LEGAL ISSUES.

As of the date of this opinion, neither Ramirez nor Mr. Gayle-Smith have submitted any pleadings demanding a jury trial to resolve their dispute.  Accordingly, the Court will address: (i) whether Ramirez' previous jury demand in her suit against Doña Ana County applies to her dispute with Mr. Gayle-Smith; (ii) whether Mr. Gayle-Smith's Notice of Charging Lien asserts a claim for relief which may be resolved by a jury; (iii) whether to grant Doña Ana County's Motion for Declaratory Order in Support of Settlement; and (iv) whether to grant the relief requested in Mr. Gayle-Smith's Notice of Attorney Charging Lien.  The Court has determined that, unless the parties demand otherwise, the Court will resolve the present dispute between Ramirez and Mr. Gayle-Smith by a bench, not a jury, trial.

### A.    RAMIREZ' PRIOR GENERAL JURY DEMAND DOES NOT COVER THIS DISPUTE.

Although Ramirez made a general jury demand early in the case, the present dispute between Ramirez and Mr. Gayle-Smith raises issues that Ramirez' original complaint does not cover.

Ramirez' jury demand is in her original complaint which pleads, by its caption, only claims against Doña Ana County, not her attorney, Mr. Gayle-Smith, and therefore, does not apply to this present dispute.  See Okla. Natural Gas Co. v. LaRue., 1998 WL 568321, at **6-7 ("The caption demonstrates the [previous] demand applies only to the [plaintiff.]  The [previous] jury demand applied to a different party and addressed different issues than those implicated by the pleadings related to the intervenors' claims.").  Further, the dispute between Ramirez and Mr. Gayle-Smith over fees and the existence of an attorney-client relationship raises new issues, based on facts which Ramirez' original complaint for civil rights violations against Doña Ana County did not allege, therefore her previous jury demand cannot cover the issues in this present dispute.  See id.; Nissan Motor Corp. v. Burciaga, 982 F.2d at 409 ("To establish a right to a trial by jury . . .[t]he amended complaint must do more than merely raise new theories of recovery based on the same facts as those issues raised in the original complaint . . . [but must] raise issues which were not raised in the original complaint.").   Additionally, this matter involves a new form of legal relief between Mr. Gayle-Smith and Ramirez, and entails issues substantially different from the sexual-harassment allegations in Ramirez' previous complaint in which she demanded a jury trial; therefore, this present dispute raises new issues not covered by Ramirez' previous jury demand.  See Bereslavsky v. Caffey, 161 F.2d at 500 (holding that a party may demand a jury trial when his amended complaint raised a new form of legal relief, not raised in a previous complaint); First Wisconsin National Bank of Rice Lake v. Klapmeier, 526 F.2d at 80 ("[D]efendants' amendment to the answer substantially differed from their prior pleading . . . the right to trial by jury was timely asserted as to the amendment.").  The United States general jury demand for claims against Doña Ana County could no more cover issues between Ramirez and Mr. Gayle-Smith than Ramirez' general jury demand did.  Because Ramirez did not request any relief or allege any claims related to any dispute

with Mr. Gayle-Smith in her original complaint, nor does the present dispute arise from the same facts as those alleged in Ramirez' complaint against Doña Ana County, Ramirez' previous jury demand does not cover this dispute.  For similar reasons, the United States' jury demand likewise does not apply to this dispute.

In further support of the Court's conclusion, Ramirez and Mr. Gayle-Smith have acquiesced to the Court's determination that the July 9, 2010 trial should be a bench trial by failing to raise any objection to the Court's statements at the hearing or subsequently.  See Okla. Natural Gas Co. v. LaRue, 1998 WL 568321, at *7 ("Mr. LaRue also effectively consented to a non-jury trial. . . . [by failing to make a timely jury demand after] repeated indications that this was scheduled to be a non-jury trial-the joint status report and the district court's scheduling order.").  Ramirez and Mr. Gayle-Smith have therefore effectively consented to a non-jury trial.  In accordance with rule 39(b), the Court has determined that this matter will be decided by a bench trial, unless there is a timely and appropriate demand that the jury resolve the issues.

The Court's determination that Ramirez' previous jury demand does not cover her dispute with Mr. Gayle-Smith does not affect the Court's jurisdiction over the dispute.  The Tenth Circuit has ruled that disputes over attorneys' fees arising from matters litigated before a court fall within the same "transaction" as the matter before the court, giving a court supplemental jurisdiction over the dispute.  Jenkins v. Weinshienk, 670 F.2d at 918; 28 U.S.C. § 1367(a).  The Court's ruling that the dispute between Ramirez and Mr. Gayle-Smith is not covered by her jury demand, however, is a more narrow examination of whether the present dispute is an issue which was addressed in her previous complaint or arose from the same facts alleged in her previous complaint.  See Nissan Motor Corp. v. Burciaga, 982 F.2d at 409 (determining whether a plaintiff raised new issues in an amended complaint by examining the facts alleged in the original complaint, not whether the district

court had jurisdiction over claims in the amended complaint).  The Court has determined that the present dispute did not arise from the same facts as those which Ramirez alleged in her complaint for civil rights violations against Doña Ana County.  The original jury demands therefore are inapplicable to the dispute at issue.

### B.    MR. GAYLE-SMITH'S CHARGING LIEN DOES NOT INVOKE HIS SEVENTH AMENDMENT RIGHT TO A JURY TRIAL.

The only possible pleading before the Court on this present matter is Mr. Gayle-Smith's Notice of Attorney Charging Lien.  The Court has dismissed with prejudice claims on which Ramirez demanded a jury trial, and the only issues remaining to be resolved are ones that the parties did not contemplate when making their jury demands.  Because  the Court has determined from its research that an attorney charging lien is not within the scope of the Seventh Amendment's right to a jury trial, Mr. Gayle-Smith has not stated a claim for relief which entitles him to a jury trial.  See Albuquerque Technical Vocational Inst. v. Gen. Meters Corp., 17 Fed. Appx. at 874 ("Under New Mexico Law, an attorney's lien is an equitable remedy originating from the common law.").

### C.    OTHER POSSIBLE CLAIMS FOR RELIEF HAVE NOT BEEN RAISED.

While the parties have not submitted briefs on this dispute, the Court has determined some issues which might be raised by the parties: (i) whether and when an attorney-client relationship existed between Ramirez and Mr. Gayle-Smith; (ii) whether Mr. Gayle-Smith is entitled to relief under a theory of quantum meruit; (iii) the amount, if any, of attorneys' fees which are due to Mr. Gayle-Smith; and (iv) whether either Mr. Gayle-Smith or Ramirez breached a contract to which they had previously agreed.  The Court has determined that the parties may demand a jury trial on the following issues: (i) the existence of an attorney-client relationship, see Int'l Tele-Marine Corp. v. Malone & Assocs., Inc. 845 F. Supp. at 1431 ("[W]hether an attorney-client relationship exists

-24-

is a question of fact for the jury."); and (ii) whether any party has breached an existing contract, <u>see</u> <u>Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry</u>, 494 U.S. at 570 (distinguishing between "a breach of contract claim-a legal issue" and other equitable issues).   Additionally, if Mr. Gayle-Smith were to claim that Ramirez owes him attorney's fees under a legal, not an equitable, theory, Mr. Gayle-Smith would be entitled to a jury trial to resolve the dispute.   See <u>Curtis</u> <u>v. Loether</u>, 415 U.S. at 195 ("[T]he [Seventh] [A]mendment then may well be construed to embrace all suits which are not of equity and admiralty jurisdiction.").   Mr. Gayle-Smith would not be entitled to a jury trial on a claim for relief under a theory of quantum meruit.   See <u>Union Tele. Co.</u> <u>v. Qwest Corp.</u>, 495 F.3d at 1197 ("[Q]uantum meruit[] is an equitable doctrine.").

For the foregoing reasons, the Court had concluded that it does not need to have a jury trial to resolve the dispute between Ramirez and Mr. Gayle-Smith.   The Court would therefore proceed as it announced in the hearing and try these issues in a bench trial unless one or both of the parties demands a jury trial and persuades the Court that a jury trial is necessary on at least one claim.   On June 30, 2010, however, the Court was informed that Mr. Gayle-Smith and Ramirez had, with the help of Judge Molzen, settled their dispute.   The specifications of that settlement include Doña Ana County issuing separate settlement checks for Mr. Gayle-Smith and Ramirez, thus rendering Doña Ana County's Motion for Declaratory Order moot.   Because the settlement between Mr. Gayle-Smith and Ramirez make it unnecessary, the Court will deny Doña Ana County's Motion for Declaratory Order as moot.   Additionally,  the Court finds it appropriate to grant Ramirez' Motion to Withdraw Documents -- Mr. Gayle-Smith's Motion to Withdraw and Notice of Attorney Charging Lien -- since those documents addressed issues which were resolved by Mr. Gayle-Smith and Ramirez' settlement.

**IT IS ORDERED** that: (i) the Board of County Commissioners of the County of Doña Ana,

New Mexico's Motion for Declaratory Order in Support of Settlement (Doc. 341) is denied as moot;

(ii) Plaintiff Ramirez' Motion to Withdraw Documents (Doc. 353) is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
  United States Attorney
Michael Hoses
Elizabeth M. Martinez
  Assistant United States Attorneys
Albuquerque, New Mexico

-- and --

Carolyn Peri Weiss
Jodi B. Danis
John M. Gadzichowski
Rachel Hranitzky
Lori Beth Kisch
Richard S. O'Brien
  Trial Attorneys, Employment Litigation Section
Civil Rights Division
United States Department of Justice
Washington, D.C.

     *Attorneys for the Plaintiff*

Paul Michael Gayle-Smith
Law Offices of Paul M. Gayle-Smith
Las Cruces, New Mexico

     *Attorney for Intervenor-Plaintiff Sally Ramirez*

Sally H. Ramirez
Las Cruces, NM

     *Intervenor-Plaintiff*

Rocio Toriz
Alameda, California

-- and --

Raul A. Carrillo, Jr.
Steven E. Jones
Carrillo Law Firm, LLC
Las Cruces, New Mexico

     *Attorneys for the Defendant*